UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------X

DAVID BONSEY,

                Plaintiff;

                                   13 Civ. 2708 (RWS)

   - v. -

                                      OPINION

MARY LOUISE KATES,

                Defendant.

----------------------------------X

A P P E A R A N C E S:

        Attorney for Plaintiff DAVID BONSEY

        COWAN, DEBAETS, ABRAHAMS & SHEPPARD LLP
        41 Madison Avenue, 34th Floor
        New York, New York 10010
        By:  Al J. Daniel, Jr., Esq.


        Attorney for Defendant MARY LOUISE KATES

        KORNSTEIN WEISZ WEXLER & POLLARD, LLP
        757 Third Avenue
        New York, New York 10017
        By:  Daniel J. Kornstein, Esq.

**Sweet, D.J.**

Defendant David Bonsey ("Bonsey") moves the Court to dismiss Plaintiff Mary Louise Kates's ("Kates") First Amended Complaint (the "Complaint") for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6), and to dismiss or transfer for improper venue under Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1404(a).  Plaintiff, in turn, cross-moves for leave to amend the Complaint.

For the foregoing reasons, Defendants' motion to dismiss is granted and Plaintiff's leave to amend is denied.

## I. PRIOR PROCEEDINGS

The original complaint was filed on April 24, 2013, and the First Amended Complaint, filed two days later, was served on Plaintiff in California on May 1, 2013.

Defendant served interrogatories and document requests on Plaintiff's counsel on June 24, 2013, and Defendant served answers to the interrogatories and produced 58 pages of documents responsive to Defendant's requests on July 24, 2013. (*See* Declaration of David Bonsey, "Bonsey Decl."; ¶¶ 13-14.)

1

## II.  BACKGROUND

Plaintiff was a citizen and resident of Massachusetts when this action was filed on April 24, 2013, but moved to Manhattan shortly thereafter and has been a resident and citizen of New York since June 1, 2013.  (Compl. ¶ 7.); (*see* Bonsey Decl. ¶ 5.)  Plaintiff is a trained violinmaker and musician, and an expert in the field of fine and antique string instruments, including making regular appearances as an appraiser on the *Antiques Road Show* television series.  (Compl. ¶ 7.)  Defendant is domiciled in California, where she has lived since moving from Maryland in April of 2013.  (Compl. ¶ 9.) Defendant is a former interior designer and widower of Stephen Kates, a well-known cellist and professor at the Peabody Conservatory of Music of Johns Hopkins University in Baltimore, Maryland.  (Compl. ¶ 9.)

The dispute arises over an alleged agreement over a rare cello (the "cello").  In August 2005, Plaintiff placed the cello on loan to the Department of Musical Instruments in the Metropolitan Museum of Art in New York City.  Plaintiff told Defendant that she was still interested in selling the cello and provided him with photographs and provenance documents which would be of interest to potential purchasers. (Compl. ¶¶ 19-20.) During this time, Defendant found several potential purchasers

2

and, with Plaintiff's express permission, arranged for several
potential musical artists and other potential purchasers to
examine the instrument at the Metropolitan Museum and in one
case at the law offices of Plaintiff's attorney in Manhattan.
(Compl. ¶¶ 20; 25.)

In August 2010, Plaintiff alleges that he and Defendant
"orally agreed" on the telephone that he would be her exclusive
agent for the showing and sale of the cello "until mutually
agreed otherwise." (Compl. ¶ 21.) According to Plaintiff, the
parties also orally agreed that Plaintiff, in return for his
services, would receive a 10% commission of the sales price.
The Complaint alleges that the parties intended to, but never
did, reduce the oral agreement to writing. Toward that end, in
August 2010, Plaintiff sent a written Exclusivity Agreement to
Defendant for the purpose of "memoraliz[ing] the terms" of their
alleged oral agreement. (Compl. ¶ 22.) Defendant did not sign
the written agreement, but said that she sent it to her
attorney, who later claimed it was lost. (Compl. ¶¶ 21-22.)
Despite this, Plaintiff believed he was and continued to act as
Defendant's exclusive agent under the alleged oral agreement.
In fact, in September of 2010, Plaintiff recruited the Pei-
Calhoun foundation as a potential buyer. Plaintiff's attorney
drafted an option agreement between Pei-Calhoun and Defendant,

which included Plaintiff's representation that "the only agent or broker that Seller [Defendant] has used in connection with the sale contemplated by this agreement is David Bonsey and [Defendant] agrees that Seller will be solely responsible for payment of any commission payable to him."  (Compl. ¶ 3(b).) Defendant's attorney, Mr. Varet, sent copies of this draft to both parties.  Ultimately, the foundation withdrew from the deal due to an illness of one of its principals, but Plaintiff still arranged for Defendant to be reimbursed for the $5,000 in legal and accounting expenses connected with the transaction.  (Compl. ¶ 26.)

On April 26, 2011, Plaintiff was contacted by another potential buyer who was agreeable to the asking price, but wanted to examine the cello because he'd hear a rumor that the cello had a crack on its back.  Plaintiff informed Defendant and Mr. Varet of this potential buyer's request, and Mr. Varet responded that Defendant "did not want to show" the cello at that time.  (Compl. ¶¶ 28-31.)  However, Defendant personally sent an email to Plaintiff on April 29, 2011 directing him to "[p]lease dispel any false and nasty rumors regarding any cracks whatsoever.  The cello was in perfect condition when put on loan with the Met and was verified as such."  (*Id.*)  Defendant also directed Plaintiff arranged to arrange for the potential buyer

4

to examine the cello at the Museum in New York City on or about
May 2, 2011.  (Compl. ¶ 31.) Biddulph, the potential buyer,
continued to pursue the cello through Plaintiff, requesting
documents regarding the cello and asking for contact information
for Mr. Varet on May 25, 2011, which was provided the next day.
Biddulph confirmed receipt of the documents in early June 2011.
(Compl. ¶ 25.)

A few weeks later, still in June of 2011, Biddulph told
Plaintiff that the cello had been sold, and asked if Plaintiff
had been well treated in connection with the sale of the cello.
(Compl. ¶ 34.)  As a result of Biddulph's statement, Plaintiff
believes that Defendant sold her cello to one of Biddulph's
clients in May or June of 2011.  (Compl. ¶ 36.)  Plaintiff thus
alleges that the buyer was "introduced to Defendant through
Plaintiff's dealings" and owes Plaintiff commission on the sale.
(*Id.*)  In August 2011, Plaintiff asked Mr. Varet to confirm
whether Defendant had sold the cello; Mr. Varet did not confirm
or deny the sale, but asked Plaintiff to cease any further
dealings with third parties regarding the cello.  (Compl. ¶ 35.)
Plaintiff has to date refused to pay Defendant the agreed 10%
commission of the sales price, which, upon information and
belief, was sold for $6,000,000.  (Compl. ¶ 37.)

Based on these allegations, Plaintiff claims that Defendant breached their purported contract, whether "express or implied," and that Plaintiff is owed $600,000, representing 10% commission of the sales price.  Further, Plaintiff relies on these facts to allege claims of (1) quantum meruit, seeking the same $600,000 for the "reasonable value" of his "services" (Compl. ¶¶ 44-49), and (2) unjust enrichment, for restitution for the "value of his services" (Compl. ¶¶ 50-55.).

### III. STANDARD OF REVIEW

A. Rule 12(b)(6)

On a motion to dismiss pursuant to Rule 12(b)(6), all factual allegations in the complaint are accepted as true, and all inferences are drawn in favor of the pleader. *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir. 1993). The issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir. 1995) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 235-36 (1974)).

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

6

face.' " *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). Plaintiffs must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." *Twombly,* 550 U .S. at 570. Though the court must accept the factual allegations of a complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 555).   In ruling on such a motion, "the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint." *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005).

  B. Rule 12(b)(2)

    On a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), the plaintiff bears the burden of showing that the court has jurisdiction over the moving defendant(s). *Metro. Life Ins. Co. v. Robertson-Ceco Corp.,* 84 F.3d 560, 566 (2d Cir.1996). To satisfy that burden where the parties have conducted jurisdictional discovery but no evidentiary hearing has been held, a plaintiff need only make a *prima facie* showing of personal jurisdiction. *Metro. Life Ins.,*

84 F.3d at 567. Such a *prima facie* showing is satisfied by "an averment of facts that, if credited by [the ultimate trier of fact], would suffice to establish jurisdiction over the defendant." *Ball v. Metallurgie Hoboken-Overpelt, S.A.,* 902 F.2d 194, 197 (2d Cir. 1990).

In reviewing a Rule 12(b)(2) motion, a court must construe all pleadings and affidavits "in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party." *A.I. Trade Fin., Inc. v. Petra Bank,* 989 F.2d 76, 79-80 (2d Cir.1993); *accord Metro. Life Ins.,* 84 F.3d at 567; *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.,* 918 F.2d 1039, 1043 (2d Cir. 1990). However, a plaintiff may not rely merely on conclusory statements or allegations to establish jurisdiction. *Ball,* 902 F.2d at 197.

## IV.  EXERCISE OF PERSONAL JURISDICTION OVER DEFENDANT

In a federal diversity case such as this, the resolution of issues concerning personal jurisdiction are governed by the law of the state in which the district court sits.  *DiStefano v. Carozzi N. Am., Inc.,* 286 F.3d 81, 84 (2d Cir. 2001); *CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir. 1986). Accordingly, New York law controls personal jurisdiction in this action.

A. Jurisdiction Under CPLR 302(a)(1)

CPLR 302(a)(1) permits a court to exercise jurisdiction over a person or entity that "in person or through an agent ... transacts business within the state or contracts anywhere to supply goods and services in the state."  N.Y. CPLR § 302(a)(1) (McKinney's 2004).  Specifically, jurisdiction under CPLR 302(a)(1) is proper where: (1) the defendant has transacted business in New York; and (2) the cause of action arises out of the subject matter of the transacted business. *CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir. 1986).

First, a non-domiciliary transacts business under CPLR 302(a)(1) where she "purposefully avails [herself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." *CutCo Indus., Inc.,* 806 F.2d at 365 (quoting *McKee Elec. Co. v. Rauland-Borg Corp.,* 20 N.Y.2d 377, 382 (1967)).  A court must look to the totality of the circumstances in deciding whether the defendant has engaged in such purposeful activity. *CutCo Indus.,* 806 F.2d at 365.  Second, the court must find "some articulable nexus between the business transacted and the cause of action sued upon." *McGowan v. Smith,* 52 N.Y.2d 268, 272 (N.Y. 1981); *accord Kreutter v. McFadden Oil Corp.,* 71 N.Y.2d 460, 467 (N.Y. 1988) (requiring a "substantial relationship between the

9

transaction and the claim asserted"); *see also PDK Labs, Inc. v. Freidlander,* 103 F.3d 1105, 1109 (2d Cir.1997).   In a breach of contract case, the pivotal inquiry is "whether the defendant has performed purposeful acts in New York in relation to the contract." *A.C.K. Sports, Inc. v. Doug Wilson Enters.,* 661 F.Supp. 386, 390 (S.D.N.Y. 1989).   Though contacts through telephone calls, the mail, and by facsimile, are usually insufficient to confer personal jurisdiction, *see International Customs Assoc., Inc. v. Ford Motor Co.,* 893 F.Supp. 1251, 1261 (S.D.N.Y. 1995) (collecting cases), "one need not be physically present in order to be subject to the jurisdiction of our courts under CPLR 302 for, particularly in this day of instant long-range communications, one can engage in extensive purposeful activity here without ever actually setting foot in the State." *Parke-Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13 (1970) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316-17 (1945)).

In this case, Plaintiff herself and through the actions of Mr. Varet "performed purposeful acts in New York in relation to the contract." *A.C.K. Sports, Inc.*, 661 F. Supp. at 390.   The property at issue in the contract, and performance under the contract in securing a buyer, was centered in New York. Plaintiff's proposed contract was drafted and sent to

10

Defendant's attorney in New York, and all potential buyers found by Plaintiff were directed to examine the cello in New York, including at Mr. Varet's offices in New York.  Further, Defendant sought out a New York attorney, and dealt with the cello exclusively in New York, refusing to have the cello moved for inspection, for the entire six year period at issue in the purported agreement.  Defendant's physical presence in New York is thus irrelevant, *see Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 166-170 (2d Cir. 2010) ("a defendant need not be physically present in New York to transact business there within the meaning of the first clause of section 302(a)(1) . . ."), as she was still  an "active participant" in selling her cello, which was in New York.  *Parke-Bernet Galleries, Inc.*, 308 N.Y.S.2d at 340.  Moreover, she was "directly assisted in this activity by [Mr. Varet], who was physically present."  *Id.* Whether we "view this case as one in which [Kates had personally engaged in purposeful activity here or as one in which—in the language of section 302—[s]he had engaged in such activity 'through an agent' present here, there is ample basis for concluding that the [D]efendant is subject to the jurisdiction" with respect to the cause of action arising out of the sale of the cello.  *Id.*

11

A. Due Process

In addition to determining whether the New York long-arm statute extends the state's jurisdiction over a non-domiciliary defendant, a court must also determine whether exercise of this jurisdiction comports with federal due process. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 305 F.3d 120, 127 (2d Cir. 2002). Though the meaning of "transacting business" under section 302(a)(1) "overlaps significantly" with the minimum-contacts due-process test, New York's long-arm statute encompasses a wider range of activity than the minimum-contacts doctrine. *Best Van Lines,* 490 F.3d at 247–48 (citing *McKee Elec. Co. v. Rauland-Borg Corp.,* 20 N.Y.2d 377, 382 (1967)). To satisfy due process, a court must therefore undertake an additional two-step analysis: (1) a "minimum contacts" inquiry; and (2) a "reasonableness" inquiry. *Bank Brussels Lambert,* 305 F.3d at 127; *Metro. Life Ins.,* 84 F.3d at 567.

First, under the "minimum contacts" inquiry, a court must determine whether the defendant "has 'certain minimum contacts [with the forum] . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.,* 241 F.3d 135, 152 (2d Cir.2001) (quoting *Calder v. Jones,* 465 U.S. 783, 788 (1984)) (alteration in original and internal

12

citations omitted). To establish minimum contacts with New York, a plaintiff must show that the moving defendant "purposefully availed" himself of the privilege of doing business in New York and "should reasonably anticipate being hauled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980); *accord Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985) (requiring that "there be some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws").

Under the second step of the due process analysis, a court must determine "whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice'—that is, whether it is reasonable under the circumstances of the particular case." *Metro. Life Ins.,* 84 F.3d at 568 (quoting *Int'l Shoe,* 326 U.S. at 316). In evaluating reasonableness, courts must consider the following five factors: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in

13

furthering substantive social policies." *Metro. Life Ins.,* 84
F.3d at 568; *accord Asahi Metal Indus. Co. v. Superior Court,*
480 U.S. 102, 113-14 (1987); *Burger King,* 471 U.S. at 476-77;
*Bank Brussels Lambert,* 305 F.3d at 129.

Exercising personal jurisdiction over Defendant comports
with the additional requirements of due process.  Through her
actions and the actions of Mr. Varet, Kates purposely availed
herself to the privileges of doing business with Plaintiff in
New York and could reasonably anticipate having to defend her
actions in a New York court.  *World-Wide Volkswagen,* 444 U.S. at
297.  Defendant placed the cello at issue in the contract in New
York, hired a New York attorney to assist with the process, and
had buyers come to New York to examine the cello for potential
purchase.  As a result, Defendant has sufficient "minimum
contacts" with New York such that the exercise of this Court's
jurisdiction over her "does not offend traditional notions of
fair play and substantial justice." *Calder,* 465 U.S. at 788.
Further, given that the cello was held in New York for the six
year period at issue, that Defendant's lawyer is based in New
York, that all potential legal documents were sent to Mr.
Varet's offices in New York, and that most witnesses who viewed
the cello came to New York to do so, exercise of jurisdiction
over Kates is reasonable.

14

## V. BREACH OF CONTRACT CLAIM

A. <u>The Complaint Satisfies the Necessary Pleading Requirements</u>

The Complaint "raises the right to relief above the speculative level" regarding the alleged agreement for the purposes of a motion to dismiss. *Aschcroft v. Iqbal*, 560 U.S. 662 (2009); *see also Kelly-Brown v. Winfrey*, 717 F.3d 295, 297 (2d Cir. 2013) (at the motion to dismiss phase, the Court must 'accept all factual allegations in the complaint as true, drawing all reasonable inferences in favor of plaintiff."). Though Plaintiff cannot recall the exact date of the purported oral agreement, certain documents confirm the parties' intention that Bonsey would act as exclusive agent in seeking a buyer for the cello. (Compl. ¶¶ 22, 24, 26, 31.)  The draft option purchase agreement, for instance, prepared by Defendant's attorney in September of 2010 contained the representation that "the only agent or broker that Seller [Defendant] has used in connection with the sale contemplated by this agreement is David Bonsey and [Defendant] agrees that Seller will be solely responsible for payment of any commission payable to him." (Compl. ¶ 26.)  Further, Plaintiff throughout the six year period actively recruited numerous buyers, and communicated directly with Mr. Varet and Defendant regarding the potential purchase.  In addition, Mr. Varet in August of 2011 told

Plaintiff to cease contacting third parties regarding the cello, elucidating an understanding that Plaintiff previously was responsible, at least in part, for assisting in the sale of the cello. (Compl. ¶ 35.) Taken together, these facts are sufficient to establish an understanding between the parties that Plaintiff was to assist in the sale of the cello, and Defendant would pay Plaintiff a commission if the cello were sold through these efforts.

   B. The Oral Agreement is Barred by the Statute of Frauds

   However, "a service contract of indefinite duration, in which one party agrees to procure customers, or accounts, or orders on behalf of the second party, is not by its terms performable within a year -- and hence must be in writing and signed by the party to be charged -- since performance is dependent, not upon the will of the parties to the contract, but on that of a third party." *McCollester v. Chisholm*, 104 A.D. 2d 361, 361 (2d Dep't 1984); *see also* General Obligations Law, §5-701. It is undisputed that there was no formal, signed contract between the parties. Though the draft option purchase agreement evidences intent by the parties to pay commission to Plaintiff for that specific buyer, it fails to show evidence of a longer term Exclusivity Agreement between the parties that Plaintiff asserts as the basis for his breach of contract claim. *See*

16

*McCollester*, 104 A.D. at 361 (documents which do not "contain expressly or by reasonable implication all of the material terms of the agreement, including the rate of compensation", fail to meet the essential elements of a memorandum sufficient to satisfy the Statute of Frauds). In addition, though the sale of cello could have been completed within one year, "performance [wa]s dependent, not upon the will of the parties to the contract, but on that of a third party" buyer. *McCollester*, 104 A.D. at 361. Where "the accrual of commission is dependent upon the will of a third party and not upon the parties to the contract, the oral commission agreement is, by its terms, incapable of completion within one year" and barred by the Statue of Frauds. *Intertex Trading Corp. v. Ixtaccihuatl S.A. de CV*, 754 F. Supp. 2d 610, 613 (S.D.N.Y. 2010); *see also Robins v. Zwirner*, 713 F. Supp. 367, 375 (S.D.N.Y. 2010) (Where an "oral agreement between the parties call[s] for performance of an indefinite duration and [can] only be terminated within one year by its breach during that period," it is void under the Statute of Frauds); *Koret, Inc. v. RJR Nabisco, Inc.,* 702 F. Supp. 412, 414-15 (S.D.N.Y.1988) ("An oral contract that is 'terminable within one year only upon a breach by one of the parties' is not enforceable under New York law." (citations omitted)). The oral agreement as described in the Complaint, to continue until

17

"mutually agreed otherwise," is therefore invalid and
Plaintiff's breach of contract claim fails.

## VI.  QUANTUM MERUIT OR UNJUST ENRICHMENT CLAIMS

In the alternative to breach of contract, Plaintiff pleads
claims for quantum meruit or unjust enrichment.  However, "it is
well settled in New York [] that a plaintiff may not assert an
unjust enrichment claim to circumvent the statute of frauds."
*Intertex Trading Corp.*, 754 F. Supp. 2d at 616.   *See, e.g.*,
*Minichiello v. Royal Business Funds Corp.,* 18 N.Y.2d 521, 525
(1966) (holding that section 5-701(a)(l0) "make[s] clear that
the contracts required to be evidenced by writing include a
contract or agreement for the compensation of a business broker
. . . and that the requirement cannot be avoided by an action
for compensation in quantum meruit") (quoting N.Y. Legis Doc.,
1964, No. 65(f)); *Tower International, Inc. v. Caledonian
Airways, Ltd.,* 133 F.3d 908, 1998 WL 3614, *3 (2d Cir. 1998)
(table) (noting that, in order to succeed on an unjust
enrichment claim, the plaintiff has to prove the common law
elements of unjust enrichment and that the writing requirement
of the statute of frauds is satisfied); *Zeising v. Kelly,* 152
F.Supp.2d 335, 345 (S.D.N.Y. 2001) ("Plaintiff cannot simply
restate his contract claim, which is barred by the Statute of
Frauds, in an attempt to obtain damages in a quasi-contractual

claim."). Plaintiff, therefore, may not simply rely on the doctrine of unjust enrichment or quantum meruit to recast a contract action that would otherwise be barred by the statute of frauds, and as such these claims are dismissed. *See Corsello v. Verizon New York, Inc.*, 18 N.Y.2d 777, 790 (2012) ("if plaintiff's other claims are defective, an unjust enrichment claim cannot remedy the defects.").

## VII. VENUE

28 U.S.C. § 1391(b)(2) provides for venue in a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated. . . ." In this case, a substantial part of the events giving rise to the claim occurred in New York. Despite Defendant's contentions to the contrary, Plaintiff's proposed contract was sent to Defendant's attorney in New York, and the draft option contract evidencing some type of agreement between the parties was drafted by Mr. Varet in New York. The cello itself was in New York, and all potential buyers came to view and examine the cello in New York. Further, Plaintiff often dealt with Defendant's attorney regarding the alleged agreement, and Mr. Varet is located in New York. With respect to transfer, Plaintiff has made clear that he will accommodate Defendant's

19

personal situation with respect to the taking and location of depositions.  Venue is therefore proper.  In any event, because Plaintiff's claims are dismissed, this issue is irrelevant.

## VIII.   LEAVE TO AMEND IS DENIED

In the event the Court finds deficiencies in Plaintiff's pleadings, Plaintiff also moves for leave to amend.

The party opposing a motion to amend, here the Defendant, bears the burden of establishing that an amendment would be futile. *See Blaskiewicz v. County of Suffolk,* 29 F.Supp.2d 134, 137-38 (E.D.N.Y. 1998) (citing *Harrison v. NBD Inc.,* 990 F.Supp. 179, 185 (E.D.N.Y. 1998)). "A proposed amendment to a pleading would be futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Oneida Indian Nation of New York v. City of Sherrill,* 337 F.3d 139, 168 (2d Cir. 2003) (citing *Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119, 123 (2d Cir. 1991)). Therefore, "[f]or the purposes of evaluating futility, the 12(b)(6) standard is applied: all well pleaded allegations are accepted as true, and all inferences are drawn in favor of the pleader." *E\*Trade Fin. Corp. v. Deutsche Bank AG,* 420 F.Supp.2d 273, 282 (S.D.N.Y. 2006) (citing *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir. 1993)).

Here, Plaintiff did not submit a proposed amendment, and merely noted that "Plaintiff can readily provide additional factual details to [the] complaint if deemed necessary." (Plaintiff Memorandum, "Mem."; at 23.)  Without a proposed pleading, courts have often denied leave to amend, as it is impossible to determine whether the plaintiff's "claim could survive a motion to dismiss, whether it was futile, or whether it was frivolous." *Rosendale v. Iuliano*, 2003 WL 21182134, at *3 (2d Cir. May 20, 2003) (affirming District Court's denial of leave to amend where Plaintiff failed to submit proposed amendment); *see also Dougherty,* 282 F.3d at 87-88 (noting that futility of amendment will serve to prevent amendment). Further, in this case, Plaintiff has already alleged that the oral agreement was to remain "until mutually agreed otherwise," which voids the agreement under the statue of frauds.  No additional facts can remedy this flaw.  Under these circumstances, Plaintiff's request for leave to amend is denied. *See, e.g., State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld,* 921 F.2d 409, 418 (2d Cir.1990) (imputing lack of good faith to plaintiff in part because plaintiff "did not file a proposed amended complaint" when it sought leave to amend); *Twohy v. First Nat'l Bank of Chicago,* 758 F.2d 1185, 1197 (7th Cir.1985) (observing that "normal

21

procedure is for the proposed amendment or new pleading to be submitted" with the motion for leave to amend, and that failure to do so "indicates a lack of diligence and good faith").

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted and Plaintiff's leave to amend is denied.

It is so ordered.

**New York, NY**
**August  17 , 2013**

ROBERT W. SWEET
U.S.D.J.